Good morning, Your Honors. Donald Horgan, peering for Petitioner Ramesh Kanda. I'm sorry, I didn't get your name. I'm sorry, it's Donald Horgan for Ramesh Kanda, the petitioner. Okay, we have Dennis Reardon down here. Thank you. And I'd like, if I could, to reserve one minute for rebuttal, Your Honor. Could you spell your last name for me? Yeah, it's Horgan, H-O-R-G-A-N. H-O-R-G-A-N. Thank you, Mr. Horgan. Yes. Your Honor, as you know, this appeal challenges the district court's denial of habeas relief as to Mr. Kanda's state court conviction for second-degree murder. The court's instructions concerning heat of passion, we submit, denied Mr. Kanda his right to due process in this case. And that is specifically because in order to prove that Mr. Kanda murdered Ramesh Lal with implied malice, that is, without the specific intent to kill but with disregard of danger to life, the State had to prove beyond a reasonable doubt that Mr. Kanda had not acted in the heat of passion. But the court's instructions on that point eliminated this mens rea requirement. The court told jurors that heat of passion eliminated malice of forethought and reduced crime to manslaughter only if Kanda specifically intended to kill, in other words, in instances where there is an express malice theory. The court told the jurors there is no malice of forethought if the killings occurred upon a sudden quarrel or heat of passion. In order to prove voluntary manslaughter, each of the following elements must be proved. One, a human being was killed. Two, the killing was unlawful. And three, the killing was done with the intent to kill, meaning with express malice. Now, the government has argued that this instructional error doesn't matter because other instructions informed all the jurors that malice dissipates or that heat of passion, rather, dissipates malice in all instances. It always supplants a finding of malice. But any rational juror hearing these instructions would have taken them to mean the heat of passion eliminates malice only where the defendant actually intended to kill. In this specific case, where there was no intent to kill, but the defendant doesn't act that is dangerous to life and disregards the danger to life, heat of passion simply doesn't matter. That is what this trial court told the jurors in the case. And that's, in fact, exactly how the prosecutor argued the case. The defense, during his closing, spent an ample amount of time arguing two theories. One, that Mr. Conda had been unconscious at the time of the killing as a result of the severe beating he had taken. And secondly, that if he had not been, the jury did not accept that he had been actually unconscious. He had been so dazed by the severe beating he had taken at the hands of Mr. Law and Mr. Batra, that when he killed Mr. Law, he did so not intending to kill, but with a disregard for the danger to life. And that is the theory that is placed in issue by the court's instructions, because in that instance, if that were what the jury found that Mr. Conda had done, they were directly told that heat of passion was not part of the case. It didn't matter. The presence of heat of passion did not reduce the crime from murder to voluntary manslaughter. The government has made a great deal about the fact that the remaining instructions corrected this error, because in the remaining instructions, they state that heat of passion is incompatible with malice generally. But what those other instructions did not do was specifically address this deficient instruction having to do with implied malice murder. Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. That's Francis v. Franklin, 1985. This is an instruction that by all accounts, by the admission of the Attorney General, is flatly, unambiguously wrong, just as it was wrong in Hogue v. Carey. What the instruction did, rather, was it omitted an element of implied malice murder, the absence of heat of passion. We cannot tell by looking at the verdict in this case whether, indeed, the court found that this had been a killing done with expressed malice and that it had not been dissipated in heat of passion, a valid finding, admittedly. But on the other hand, we can't tell if the jurors, in fact, found that Conda killed Mr. Law without expressed malice. In other words, that he killed him not intentionally, but that he killed him disregarding the danger to Mr. Law's life and did an act that posed a danger to Mr. Law's life and disregarded that danger. If that was the finding of the jury, then this instruction told jurors the heat of passion didn't matter. Because we cannot tell on which theory the jury returned its verdict, this is not only a constitutional error, but it's one that mandates reversal under the authority, not only under Hogue, a Ninth Circuit case decided in 2003, but also Yates, Birx, and the related precedent that we have cited. Apart from that conclusion, if the court were to determine that a Brecht analysis is required here, because we could, because the Yates or the Hogue rule does not apply, the evidence in the case that Conda, in fact, killed unintentionally, but in the heat of passion, was, indeed, extensive. There's no doubt that Conda called Law's nephew about a misting poster. He spoke in a normal voice at the time he did so, contrary to the Attorney General's office. He was not angry, as shown at RT-168. He spoke in a normal voice. He went to the warehouse, did not bring a gun with him. He had a gun in the car, unloaded. He carried that gun because he often carried cash. But when he went to the warehouse, was not armed with the gun. He confronted Mr. Law and his brother, who began to beat him up. They had a big fist fight. They tore his shirt off. Law went to a nearby business. He was without his shirt. He told the person in that other business, I've been robbed. He returned back to the warehouse to retrieve his shirt with his checks and his cash. He said that he had over $1,000 worth of checks and $1,000 of cash. When he arrives there, he's beaten by both Law and his brother, Batra. He's beaten with a pipe. He's beaten with a board. He's beaten over the head repeatedly with the board. He's beaten so severely and so often that the board breaks. And Mr. Law then picks up the board and continues to beat him. It's only at that point that Mr. Conda returns to get his gun from the car about 20 yards away. He loads it, comes back, and fires four shots. One of them hits Mr. Law in the head, one in the thigh. Another fired in the direction of Law's brother, Batra, misses him, ricochets, and hits a nephew in the foot. A fourth shot misses entirely. Mr. Conda leaves the scene. He's dazed. He's confused. He gets into his car, puts the gun back in the car, drives back to his warehouse, has somebody drive him to the hospital. He's determined to have had a concussion. He's dazed. He's bleeding. He passes out, in fact, on the way in the car back to the hospital, and by all accounts was beaten badly, has a concussion. The shirt that he claimed to have been taken from him during this whole incident is, in fact, found in Law's warehouse. Inside the shirt, more than $1,000 worth of checks. No cash, but the checks indeed had been taken from him. They were in his shirt. They had been taken from him. Any reasonable juror, I submit, on the basis of that evidence, could find that Conda committed an unintentional killing, but with disregard to the danger of life, that he had acted, in fact, in the heat of passion. Again, this instruction given by the trial court told jurors that heat of passion dissipates malice only in an intentional killing. This was not an intentional killing by the account of Mr. Conda's defense attorney. There's one final point that the government makes. We've got about a minute left. If you want to reserve any, you can make your point, too. I'll do it very quickly, Your Honor. One final point made by the government, that unconsciousness was absolutely contradictory to the theory that it was an unintentional killing. But what the prosecutor argued was that this was a revenge killing. And under the trial court's instructions to the jury, a revenge killing in itself is highly relevant to whether or not a defendant acts in heat of passion. Any or all such, well, neither fear nor revenge, nor the emotion induced by or accompanied by or following an intent to commit a felony, nor any or all of these emotional states in and of themselves constitutes the heat of passion referred to in the law of manslaughter. Any or all of such emotions may be involved in heat of passion referred to in the law of manslaughter. The prosecutor argued it had been a revenge killing. The trial court correctly instructed that revenge is highly relevant to a finding of heat of passion. The instructional error was prejudicial, underbreaked, and for that reason, the judgment of the district court ought to be reversed. Thank you, Your Honor. Thank you, Your Honors, and may it please the Court. Bruce Ortega, appearing on behalf of the State. There was an erroneous instruction in this case, Cal Jig 840, in that it told the jury that to find voluntary manslaughter, it also had to find an intent to kill. But that instruction by itself doesn't constitute constitutional error. In fact, that instruction by itself doesn't even rise to the level of a cognizable Federal question. Under this Court's precedence, errors in the giving of lesser included offense instructions aren't cognizable Federal questions. Unless it changes the burden of proof. Correct. So the question is, did that instruction, in light of read together with Cal Jig 850, which told the jury they could only they could find that it told the jury heat of passion negated malice, somehow lessened the prosecution's burden of having to prove that heat of passion was not present in this case. And we submit that there's no reasonable likelihood the jury could have read those two instructions and come to the conclusion that if we find Mr. Conda acted under heat of passion but did not have an intent to kill, we can find second-degree murder. How does the prosecutor's argument figure into this? By my count, he argued the wrong instruction ten times. He argued that voluntary manslaughter required an intent to kill. In his rebuttal argument, it seems to me, because the defense here was unconsciousness. The defense was clearly that he had no intent to kill. Mr. Conda testified he couldn't remember anything from the time that he got beat. He couldn't remember going back to the car. He couldn't remember getting the gun. He couldn't remember shooting. Twice, in cross-examination, he made the statement that I didn't want to kill anybody. That's contradictory to not remembering what you've done. You can't remember. Okay. So if they don't buy that, then they get to consider whether the lesser included applies. Correct. If they don't buy that there was no intent to kill, then the erroneous instruction doesn't come into play, because then if they find intent to kill, they have to find whether there is. If the jury finds there is no intent to kill, then they have to find whether there is intent to kill. I'm sorry, if the jury finds there is an intent to kill, I've been misspeaking, if the jury finds there's no intent to kill, what do they do? According to the district court pointed out, they can't return a voluntary manslaughter verdict because that requires an intent to kill. So then they go to the second degree murder instruction. It's all or nothing at that point. As the district court found, the reasonable likelihood here is that the jury is either going to return the voluntary manslaughter instruction or acquit. They're not going to go up and find a second degree murder verdict when there is heat of passion, and they were told specifically in a separate instruction that there cannot be malice if there is heat of passion. So let's assume, however, that that was a reasonable likelihood. Is there brecht prejudice here? And we submit that there's not because there is no substantial evidence of no intent to kill for the reasons I tried to state earlier. When the defense is unconsciousness, I couldn't remember anything, the jury is not going to take out two statements from cross-examination in which he says I didn't want to hurt anybody and accept only that part of his testimony. In our view, this Court should not have a grave doubt that that's what happened here, especially when you factor in that there was evidence of intent to kill, a shot to the top of the head. I don't know how to state my position any more clearly than I have in the briefs unless the Court has any further questions we submit. I don't. Thank you. Thank you, Mr. Ortega. Thank you. Mr. Horgan, you really used up your time. If you want a minute, we'll give you a minute. Just one point I particularly want to emphasize because I think it's very important. The Attorney General has said, well, this is a lesser-included offense instruction, therefore not cognizable on federal habeas. That is incorrect in this case. Mulaney v. Wilbur holds that where the issue of heat of passion is present in a case, the government bears the burden of proving, in order to prove murder, the absence of heat of passion. So this deficient instruction relieved the prosecution of proving as to an implied malice murder. It removed from the prosecution the burden of showing the absence of heat of passion. That is why it is not, in fact, a lesser-included offense instruction. This, in fact, relates to the crime of implied malice murder and eliminates an element of implied malice murder. As to the inconsistency between the unconsciousness defense and the heat of passion defense, I'd submit that a jury can readily find that if, in fact, the facts don't demonstrate actual unconsciousness by the defendant, it can certainly find, in this case, the evidence was his consciousness was waxing and waning. That was the expert testimony by the defense witnesses, that his consciousness may have reached a level above actual unconsciousness that would operate as a complete defense, but nonetheless precluded him from acting with specific intent to kill. But something in between, which, in fact, was the intent to do a dangerous act and disregarding the danger caused by that act. So there's no inconsistency there. Thank you. Mr. Horgan, thank you. Mr. Ortega, thank you as well. The case has started. It is submitted. Thank you.
judges: Hall, Silverman, Graber